UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDWARD THOMAS REYNOLDS,

                Plaintiff,

v.                                                 1:15-CV-1008
                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS         PETER M. MARGOLIUS, ESQ.
  Counsel for Plaintiff
7 Howard St.
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.             DANIEL R. JANES, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 13.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Edward Thomas Reynolds ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 11, 12.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

I.     RELEVANT BACKGROUND

     A.     Factual Background

Plaintiff was born on August 30, 1966. (T. 116.) He completed the ninth grade. (T. 179.) Generally, Plaintiff's alleged disability consists of left knee injury, left shoulder dislocation, and low back pain. (T. 178.) His alleged disability onset date is September 15, 2010. (T. 116.) He previously worked as a fork lift operator and sorter. (T. 179.)

     B.     Procedural History

On April 26, 2012, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 65.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 26, 2013, Plaintiff appeared before the ALJ, Carl Stephan. (T. 29-51.) On April 30, 2014, ALJ Stephan issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-28.) On June 17, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

     C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 14-22.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 26, 2012. (T. 14.) Second, the ALJ found that

2

Plaintiff had the severe impairments of osteoarthritis of bilateral knees, left upper extremity radiculopathy, lumbosacral myofasciitis, and asthma. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 15.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work. (*Id.*)[1] The ALJ determined that Plaintiff:

> [could] sit for two hours, stand for two hours and walk for one hour before briefly needing to change positions for a total of sitting for four hours, standing for three hours and walking for one hours out of an eight-hour workday. He [could] perform occasional overhead reaching with his dominant left upper extremity and he could frequently perform bilateral foot controls. He should not perform any climbing of ladders or scaffolds, but [could] occasionally climb stairs and ramps as well as balance, kneel, crouch and crawl. Furthermore, no exposure to concentrated respiratory irritants, extremes in temperature or humidity as well as vibrations.

(*Id.*) Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 20-22.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially one argument in support of his motion for judgment on the pleadings. Plaintiff argues that the medical evidence, specifically an electromyogram and nerve conduction ("EMG/NVC") study, supported greater upper

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

3

extremity limitations than accounted for in the RFC.  (Dkt. No. 11 at 3-4 [Pl.'s Mem. of Law].)

### B. Defendant's Arguments

In response, Defendant makes one argument.  Defendant argues that the ALJ's RFC finding was supported by substantial evidence.  (Dkt. No. 12 at 5-10 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and

5

(5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. The ALJ's RFC Determination

Plaintiff's RFC is the most he can do despite his limitations. 20 C.F.R. § 416.945. The RFC is based on all the relevant medical and other evidence of record, and takes into consideration the limiting effects of all of Plaintiff's impairments. *Id.*

In formulating Plaintiff's RFC, the ALJ relied primarily on the medical source opinion of Plaintiff's treating source, Illya Szilak, M.D. and the medical opinion of non-examining medical expert Louis A. Fuchs, M.D. The ALJ afforded both opinions great weight. (T. 17, 20.) Plaintiff does not argue that the ALJ erred in his analysis of, or reliance on, these opinions.

On February 25, 2013, Dr. Szilak provided a medical source statement. (T. 383-388.) Therein he opined that Plaintiff could occasionally lift up to twenty pounds, but never more than twenty pounds. (T. 383.) He opined that Plaintiff could carry up to ten pound, but never more than ten pounds. (*Id.*) Dr. Szilak indicated that his assessment of Plaintiff's ability to lift and carry was supported by MRIs of Plaintiff's lumbar spine and knee. (*Id.*) Dr. Szilak opined Plaintiff could sit for two hours at one time, stand for two hours at one time, and walk for one hour at a time. (T. 384.) He opined that Plaintiff could sit for a total of four hours, stand for a total of three hours, and walk for a total of one hour in an eight hour workday. (*Id.*) Dr. Szilak wrote "patient has non-disabling low back pain. . . [h]e has not followed up with recommended orthopedic interventions." (*Id.*)

6

Dr. Szilak did not complete the section of the form requesting information regarding Plaintiff's limitations in the area of reaching, handling, fingering, feeling, pushing, and pulling. (T. 385.) Dr. Szilak opined Plaintiff could continuously operate foot controls. (*Id.*) Dr. Szilak opined Plaintiff could occasionally: climb stairs and ramps; climb ladders or scaffolds; balance; stoop; kneel; crouch; and crawl. (T. 386.) Dr. Szilak opined that Plaintiff had no limitations in his ability to hear or see and Plaintiff had no environmental limitations. (T. 386-387.)

At the request of the Administration, Dr. Fuchs reviewed the medical evidence in the record and provided a medical source statement. Dr. Fuchs initially reviewed Plaintiff's file in August of 2013; however, he was asked to review the file again in October of 2013 after additional information was added. (T. 444.) The additional information that Dr. Fuchs reviewed included the results of the EMG/NVC study. (*Id.*)

On November 20, 2013, Dr. Fuchs completed a medical source statement. (T. 445-450.) In terms of exertional limitations, Dr. Fuchs opined that Plaintiff could continuously lift and carry up to twenty pounds; occasionally lift and carry 21 to 50 pounds; and should never lift and carry over 51 pounds. (T. 445.) He opined that in an eight hour workday Plaintiff could sit for three hours without interruption, stand for three hours without interruption, and walk for two hours without interruption. (T. 446.) Dr. Fuchs opined Plaintiff could sit for a total of eight hours and stand for a total of eight hours, with a sit/stand option, and walk for a total of four hours. (*Id.*)

Dr. Fuchs provided an opinion regarding Plaintiff's ability to use his upper extremities. Dr. Fuchs opined that Plaintiff could continuously: reach in all directions; handle; finger; feel; push and pull with his right hand. (T. 447.) He opined that Plaintiff

could occasionally reach overhead with his left hand, and could continuously reach in "all other" direction, handle, finger, feel, push and pull with his left hand. (*Id.*) He opined Plaintiff could frequently use foot controls with both feet. (*Id.*)

In terms of non-exertional limitations, Dr. Fuchs opined Plaintiff could frequently climb stairs and ramps; continuously balance; and occasionally climb ladders or scaffolds, stoop, kneel, crouch, and crawl. (T. 448.) Dr. Fuchs opined Plaintiff could continuously work in unprotected heights, with moving mechanical parts, and operate a motor vehicle. (T. 449.) He opined Plaintiff could occasionally work in humidity and wetness, extreme cold, and extreme heat. (*Id.*) He opined Plaintiff could never work with vibrations. (*Id.*)

On September 24, 2013, Plaintiff underwent a nerve conduction study for his left arm and shoulder pain which radiated to his left hand. (T. 431-432.) The results indicated a "mildly abnormal study." (T. 432.) The conclusion stated that the NCV test "revealed mild drop of velocity of right ulnar motor nerve across elbow by 5m/s but not enough to call it Cubital syndrome. . .[o]therwise NCV was unremarkable." (*Id.*) The EMG study "revealed mild chronic denervation in left deltoid muscle (C5/6 myotome) without involvement of paraspinal muscles. . .[c]orrelation with MRI of C spine is recommended in order to [rule out] radiculopathy." (*Id.*)

Plaintiff essentially argues that the ALJ mischaracterized Dr. Szilak's medical source statement because the ALJ stated Plaintiff was more limited than Dr. Szilak opined; however, the ALJ's RFC still relied on Dr. Szilak's medical source statement. (Dkt. No. 11 at 4 [Pl.'s Mem. of Law].) As outlined herein, Dr. Szilak did not provide an opinion regarding limitations associated with Plaintiff's upper extremities. However, Dr.

Fuchs, who reviewed the medical record including the results of the EMG/NVC studies, opined that Plaintiff had limitations in his ability to use his upper extremities. Dr. Fuchs's opinion regarding Plaintiff's ability to reach was specifically included in the ALJ's RFC determination. (T. 15, 447.) Therefore, contrary to Plaintiff's assertion, the ALJ did provide for greater limitations in his RFC determination than opined to by Dr. Szilak. Dr. Szilak did not provide an opinion regarding Plaintiff's ability to reach; however, the ALJ stated Plaintiff's impairments appeared to be more limiting than Dr. Szilak's opinion allowed for and ultimately relied on Dr. Fuchs's opinion regarding Plaintiff's limitations in his ability to reach.

Plaintiff also argues that the ALJ mischaracterized the objective evidence of orthopedic specialist, Scott Pregont, M.D. and a proper reading of the August 2013 notation does not support the ALJ's RFC determination. (Dkt. No. 11 at 4 [Pl.'s Mem. of Law].) The ALJ stated in his determination that Dr. Pregont performed a physical examination on the left shoulder which indicated a "positive O'Brien's, positive lift off and positive tilt can test . . .[h]owever, [Plaintiff] had full range of motion, full and equal muscle strength, no tenderness to palpation, stability testing was stable and he had no sensory deficits." (T. 17.)

To be sure, the ALJ initially provided a general summary of Dr. Pregont's examinations conducted in March of 2011, May of 2013, and August of 2013. (T. 17.) However, he then provided a more detailed synopsis of Dr. Pregont's examinations and findings. (T. 17-18.) Dr. Pregont's examination conducted in March of 2011 indicated Plaintiff had no muscle asymmetry, scapular winging or atrophy in his left or right shoulders. (T. 346.) The March 2011 examination also indicated that Plaintiff had full

range of motion and full strength (5/5) in both shoulders.  (*Id.*)  In March of 2011, all stability tests were negative, Plaintiff had no motor or sensory deficits, Plaintiff had negative Speed and Yergasons sign, negative Neer and Hawkins's sign, positive O'Brien's, positive lift off, and positive tilt can.  (*Id.*)  Dr. Pregont's examination conducted on May 2013 indicated Plaintiff had unrestricted range of motion in his shoulders.  (T. 377.)  Dr. Pregont's August 2013 notations read "Shoulders: Examination Left Shoulder: active abduction 110 degrees; 4/5 supraspinatus strength; 4/5 infraspinatus strength; 5/5 subscapularis strength; positive Neer's; positive O'Briens."  (T. 421.)

The ALJ accounted for Plaintiff's limitations regarding his upper extremities.  The ALJ relied on the medical source opinion of Dr. Fuchs, Dr. Szilak, and consultative examiner Kautilya Puri M.D. in concluding that Plaintiff could only occasionally reach overhead with his left upper extremity and could not climb ladders or scaffolds.  (T. 15.)  Although the August 2013 notation indicated mild weakness in Plaintiff's left shoulder and a mild decrease in active abduction, other treatment notes indicated full strength and range of motion.  (T. 421.)  Dr. Fuchs's opinion took into consideration Dr. Pregont's notations and concluded that Plaintiff could occasionally reach overhead with his left upper extremity.  (T. 447.)  Further, Plaintiff fails to expand on his argument that Dr. Pregont's August 2013 treatment notation was inconsistent with the ALJ's RFC determination.  Plaintiff does not provide reasoning or evidence to support his conclusion that 4/5 weakness or a reduced range of motion would necessitate a greater limitation than that imposed by the ALJ.

In sum, substantial evidence supported the ALJ's RFC determination. The ALJ properly relied on the opinion evidence supplied by Dr. Fuchs, Dr. Szilak and to a lesser extent Dr. Puri. The ALJ did not mischaracterize the opinion evidence, nor did the specific evidence cited by Plaintiff support greater limitation than those imposed by the ALJ. Therefore, for the reasons stated herein and further outlined in Defendant's brief, it is recommended that the ALJ's determination be affirmed.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 7, 2016

_Bill Carter_
William B. Mitchell Carter
U.S. Magistrate Judge